## Goldworm v. George Calantoni & Sons, Inc., et al.

*Arnold Falk,* for plaintiffs.

*Leonard Cohn* and *Philip Lauer,* for defendant Calantoni.

*Robertson Taylor* and *Herbert Toff*, for defendant Chrin, Inc.

*Joseph Leeson*, for additional defendant Palmer Township.

GRIFO, J., August 14, 1974.

## OPINION OF THE COURT

This matter arises from plaintiffs' complaint in equity against defendant George Calantoni and Sons, Inc. (hereinafter "Calantoni"), and defendant Chrin, Inc. (hereinafter "Chrin"), seeking to recover damages for defendants' excavation which changed the drainage pattern of water on plaintiffs' land, and caused the collapse of their well, and for a trespass which damaged certain shrubbery on plaintiffs' land. Defendants, Chrin and Calantoni, joined Palmer Township (hereinafter "Palmer") as additional defendants. After the pleadings were completed, a hearing was held on November 30, 1973, and we now make the following:

## FINDINGS OF FACT

1. Plaintiffs, Lawrence P. Goldworm and his wife, Judith Goldworm (hereinafter "Goldworm"), purchased the property at 3333 Fischer Road, in Palmer Township, Northampton County, Pennsylvania, on May 18, 1964, from Calantoni, and were the owners of that property at all times relevant to this action.

2. At the time of purchase, that property derived its water supply from a well on the north side of the property.

3. That well was located in a well room, the northern wall of which was on the northern boundary of the Goldworm property.

4. That well room is attached to the foundation of a barn, which foundation is wholly north of the northern boundary of the Goldworm property.

5. George Calantoni showed the location of the well to the Plaintiffs in 1969 when they were originally inspecting the property.

6. Calantoni, in August, 1969, recorded in the Recorder of Deeds Office, Northampton County Courthouse (Plan Book 26, Page 3), a development plan indicating proposed homes and streets on the north side of the Goldworm property.

7. Excavation on a road along the north boundary of the Goldworm property began in November, 1969, and continued intermitently into 1971.

8. The excavation lowered the level of the land to the north of the Goldworm property.

9. On November 24 and 25, 1969, a bulldozer knocked down about 275 feet of a 325-foot line of forsythia bushes along the north boundary of the Goldworm property.

10. The cost of installing the entire forsythia hedge in April and May of 1969 was $500.00.

11. The bulldozer was owned and operated by Chrin.

12. On November 25, 1969, Goldworm telephoned Calantoni concerning the damaged shrubbery, and was assured that any damage would be compensated.

13. The well on the Goldworm property pumped clear water from May 18, 1964, until February 13, 1971, when it began to pump muddy water.

14. As a result of the failure of the original well to pump clear water, a new well was dug by the plaintiffs.

15. As a result of the failure of the original well to pump clear water, the plaintiffs (a) purchased a 500-gallon water tank; (b) purchased water every few days

until the new well was functioning; (c) incurred commercial laundry or laundromat expenses; and (d) incurred expenses at a motel where the family went weekly to bathe.

16. As a result of digging a new well, there was damage to the shrubbery and lawn of the Goldworm property at the site of the new well.

17. Plaintiffs incurred the following expenses under items 13 to 16 above:

| | | |
|---|---|---|
| (a) | digging new well | $1,734.00 |
| (b) | cost of water | 84.00 |
| (c) | laundry expenses | 50.00 |
| (d) | hotel expenses | 80.00 |
| (e) | shrubbery damage at the site of new well | 817.01 |

18. As a result of the excavation to the north of the Goldworm property, large sinkholes appeared to the north of the Goldworm property, one within 50 feet of the original well.

19. The testimony of a geologist, Dr. Richard Faas, established that the excavation to the north of the Goldworm property could have caused the collapse of the original well.

## DISCUSSION

The plaintiffs claim damages arising from two sources: (1) the collapse of their well, and (2) destruction of their forsythia hedge.

The plaintiffs have failed to meet the burden required by law to prove that the collapse of their well was caused by any action of any of the defendants. The law of the Commonwealth is that there can be no recovery against a party for damage to land unless it be shown that the party caused the damage in question.

Here, the plaintiffs contend that causation has been established by the testimony of their expert, and by the short time between defendant Chrin's action and the collapse of the well. However, the expert witness was unable to state with reasonable scientific certainly whether the defendants caused the collapse of the well. In Pennsylvania, causation is not established by an expert's statement that damages may have been, or even probably were, caused by the alleged activity of the defendant; rather, the expert must testify that in his professional opinion the result in question came from the cause alleged: Houston v. Canon Bowl, Inc., 443 Pa. 383, 278 A.2d 908 (1971); Warden v. Lyons Transportation Lines, Inc., 432 Pa. 495, 248 A.2d 313 (1968). The expert testimony here was clearly insufficient to establish that the defendants' excavations caused the collapse of the plaintiffs' well. As to inferring causation from the timing of the events, this is not a case of a dramatic action by the defendants followed shortly by damage to plaintiffs' land. The excavation here began in November, 1969, but the plaintiffs' well functioned normally until February, 1971, over fourteen months later. This is too long a time period to be the sole support of an inference that the excavation caused the well to collapse. Therefore, the plaintiffs have failed to establish that any of the defendants damaged their well, and recovery of the sums spent to repair the damaged well, build a new well, and continue the routine of life while the well was inoperative, must be denied.

The plaintiffs have proved that defendant Chrin destroyed 275 feet of forsythia bushes on their property. Chrin's only argument in this regard is that the damage was not properly established by plaintiffs' introduction of the bill showing the cost of installing the hedge in April and May of 1969. We think the bill was

sufficient evidence to allow the Court to calculate the diminution in value of plaintiffs' land as a result of Chrin's actions. We find this diminution to be equal to the value, as installed, of 275 feet of forsythia hedge, or $423.00.

Wherefore, we enter the following

## CONCLUSIONS OF LAW

1. Plaintiffs' request for permanent injunction is properly disposed by stipulation of counsel dated July 13, 1971, and approved by this Court on July 26, 1971.

2. The plaintiffs have failed to prove that any action of any of the defendants was the proximate cause of the collapse of their well.

3. Chrin, Inc., is liable to the plaintiffs in the amount of $423.00 for destruction of shrubbery on plaintiffs' land.

## DECREE NISI

And now, to wit this 14th day of August, 1974, in accordance with the foregoing Opinion, it is

Ordered, Adjudged, and Decreed that:

1. Plaintiffs' claim for damages against defendants, Calantoni, Chrin, and Palmer, for collapse of their well is denied.

2. Plaintiffs' claim for damage to the forsythia hedge in the amount of $423.00 is allowed, and defendant Chrin shall pay to the plaintiffs the sum of $423.00.

3. The Prothonotary shall give notice of the entry of this decree to the parties or their counsel of record, and if no exceptions are filed within twenty days thereafter, shall enter this as the final decree.